**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Sehwi Tak,

Plaintiff,

- against –

DSR International Corp. a/k/a DSR Corp a/k/a DSR Wire Corp, Jae Saeng Wie, Seungmuk Kang, and Woungkoo Hong,

Defendants.

Case No. 1:26-cv-06060

**COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiff Sehwi Tak, ("Plaintiff") individually and on behalf all other employees similarly situated, by and through his attorneys, Seo Law Group, PLLC, upon his knowledge and belief, and as against DSR International Corp. a/k/a DSR Corp a/k/a DSR Wire Corp. ("Corporate Defendant" or "DSR International") and Jae Saeng Wie, Seungmuk Kang, and Woungkoo Hong (collectively, "Individual Defendants"), respectfully alleges as follows:

## NATURE OF THE ACTION

1. This is a suit to recover unpaid overtime and other monies pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law §190. et seq. ("NYLL") on behalf of Plaintiff.

2. This action seeks overtime wages, minimum wages, liquidated damages, notice violations, reasonable attorney's fees, costs, and pre and post-judgment interest for Defendants' willful failure to pay overtime, and spread of hours, inter alia, to Plaintiff.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4. Thie Court also has jurisdiction over Plaintiff's claims under FLSA pursuant to 29 U.S.C. § 216(b).

5. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202

6. Upon information and belief, based on information provided by Plaintiff, Defendant DSR International Corp. is an enterprise engaged in interstate and international commerce, with a gross volume of sales or business exceeding $500,000. DSR International is a global manufacturer, importer, and distributor of synthetic fibers, ropes, steel wire ropes, industrial wires, and related wire and cable products, facilitating the importation and distribution of such products throughout the United States and worldwide, including for the automotive and related industries.

7. As such, based on Plaintiff's personal knowledge of Defendants' business, as well as upon information and belief, Defendants are an enterprise engaged in commerce as defined by 29 U.S.C. § 203(s).

8. Upon information and belief, as well as based on Plaintiff's first-hand knowledge, DSR International regularly purchases goods and materials in interstate and international commerce, which Plaintiff regularly handled in the course of his employment. Specifically, Defendants advertise on their website that DSR International conducts sales and business in other countries, including Europe, China, and South Korea, and engages in manufacturing operations in China, South Korea, and Vietnam under the name "DSR Family." DSR International's website can be accessed at the following URL: http://www.dsrcorp.com/kor/#firstPage.

9. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintained their corporate headquarters and offices within this district, and Defendants operate within this district. Further, Plaintiff was employed by Defendants in this district.

## THE PARTIES

### *Plaintiff*

***Plaintiff Sehwi Tak ("Plaintiff")***

10. Plaintiff is an adult individual residing in Nassau County, New York.

11. Plaintiff was employed by Defendants at DSR International as a member of DSR International's Wire Team from on or about April 20, 2019 until on or around May 31, 2026.

12. The consent to sue form for the Plaintiff is attached hereto as **Exhibit A.**

### *Defendants*

***Corporate Defendant DSR International Corp. a/k/a DSR Corp a/k/a DSR Wire Corp. ("DSR International" or "DSR")***

13. Defendant DSR International Corp. ("DSR International" or "DSR") is a domestic business corporation incorporated under the laws of the State of New York with its principal executive office located at 107 Northern Boulevard, Suite #401, Great Neck, New York 11021.

14. DSR operates a wire and cable business that manufactures or produces cables used for automotive parts and related industries.

15. Upon information and belief, DSR, is at present and has been at all times relevant to the allegations in this Complaint been an enterprise engaged in interstate commerce within the meaning of FLSA §203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods

or materials that have been moved in or produced for interstate commerce by any person; and they have each had annual gross volume sales of not less than $500,000.

16. DSR is an "employer" within the meaning of 29 U.S.C. § 203(d) and NYLL §190(3) that runs and profits from business operations as a manufacturer, importer, and distributor company based at 107 Northern Boulevard, Suite #401, Great Neck, New York 11021, where Defendants controlled the terms, conditions and pay practices relating to the Plaintiff.

***Individual Defendant Jae Saeng Wie ("Defendant Wie")***

17. Upon information and belief, Defendant Jae Saeng Wie ("Defendant Wie") is an individual who, upon information and belief, resides at 6906A 215th Street, Apartment 275, Oakland Gardens, New York 11364-2528.

18. Defendant Wie is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Wie is sued individually in his capacity as an owner, officer, and/or agent of Defendants.

19. At all relevant times, Defendant Wie was DSR's team leader and the person in charge of Plaintiff's work on the Wire Team.

20. Upon information and belief, Defendant Wie possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of the Corporate Defendant.

21. Defendant Wie determined the wages and compensation of the employees of Defendants, including Plaintiff.

22. Defendant Wie established the schedule of the Plaintiff.

23. Defendant Wie directed works tasks and assignments for employees, including Plaintiff's.

24. Defendant Wie issued pay to Plaintiff.

25. Defendant Wie disciplined Plaintiff.

26. Defendant Wie had the authority to hire and fire employees.

27. Upon information and belief, Defendant Wie has ownership interest in the Corporate Defendant and he is a manager and supervisor of all his employees and the employees of the Corporate Defendant.

28. Plaintiff was an "employee" of Defendant Wie, within the meaning of 29 U.S.C. § 203(e)(1) and NYLL §190(2).

29. Plaintiff was an "employee" of the Corporate Defendant, within the meaning of 29 U.S.C. §203(e)(1) and NYLL §190(2).

30. Defendant Wie and the Corporate Defendant through Defendant Wie, controlled the hours, the task assignments and the overall work associated with Plaintiff's work at the DSR's business premises.

31. Defendant Wie and the Corporate Defendant through Defendant Wie, controlled the terms and conditions of Plaintiff's employment and are thus "employers" within the meaning of 29 U.S.C §203(d) and NYLL §190(3).

***Individual Defendant Seungmuk Kang ("Defendant Kang")***

32. Defendant Seungmuk Kang ("Defendant Kang") is an individual who, upon information and belief, resides at 20607 48th Avenue, Floor 1, Oakland Gardens, New York 11364-1046.

33. Defendant Kang is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Kang is sued individually in his capacity as an owner, officer, and/or agent of Defendants.

34. At all relevant times, Defendant Kang was DSR's team leader and the person in charge of Plaintiff's work while primarily working in the Cable Team.

35. Upon information and belief, Defendant Kang possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of the Corporate Defendant.

36. Defendant Kang determined the wages and compensation of the employees of Defendants, including Plaintiff.

37. Defendant Kang established the schedule of the Plaintiff.

38. Defendant Kang directed works tasks and assignments for employees, including Plaintiff's.

39. Defendant Kang issued pay to Plaintiff.

40. Defendant Kang disciplined Plaintiff.

41. Defendant Kang had the authority to hire and fire employees.

42. Upon information and belief, Defendant Kang has ownership interest in the Corporate Defendant, and he is a manager and supervisor of all his employees and the employees of the Corporate Defendant.

43. Plaintiff was an "employee" of Defendant Kang, within the meaning of 29 U.S.C. §203(e)(1) and NYLL §190(2).

44. Defendant Kang and the Corporate Defendant through Defendant Kang, controlled the hours, the task assignments and the overall work associated with Plaintiff's work at the DSR's business premises.

45. Defendant Kang and the Corporate Defendant through Defendant Kang, controlled the terms and conditions of Plaintiff's employment and are thus "employers" within the meaning of 29 U.S.C §203(d) and NYLL §190(3).

***Individual Defendant Woungkoo Hong ("Defendant Hong")***

46. Defendant Woungkoo Hong ("Defendant Hong") is an individual who, upon information and belief, resides at 6024 255th Street, Floor 2, Little Neck, New York 11362-2439.

47. Defendant Hong is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Hong is sued individually in his capacity as an owner, officer, and/or agent of Defendants.

48. At all relevant times, Defendant Hong was DSR's team leader and primarily worked with Kang in the Cable Team and participated in DSR's operational work.

49. Upon information and belief, Defendant Hong possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of the Corporate Defendant.

50. Defendant Hong determined the wages and compensation of the employees of Defendants, including Plaintiff.

51. Defendant Hong established the schedule of the Plaintiff.

52. Defendant Hong directed works tasks and assignments for employees, including Plaintiff's.

53. Defendant Hong issued pay to Plaintiff.

54. Defendant Hong disciplined Plaintiff.

55. Defendant Hong had the authority to hire and fire employees.

56. Upon information and belief, Defendant Hong has ownership interest in the Corporate Defendant, and he is a manager and supervisor of all his employees and the employees of the Corporate Defendant.

57. Plaintiff was an "employee" of Defendant Hong, within the meaning of 29 U.S.C. §203(e)(1) and NYLL §190(2).

58. Defendant Hong and the Corporate Defendant through Defendant Hong, controlled the hours, the task assignments and the overall work associated with Plaintiff's work at the DSR's business premises.

59. Defendant Hong and the Corporate Defendant through Defendant Hong, controlled the terms and conditions of Plaintiff's employment and are thus "employers" within the meaning of 29 U.S.C §203(d) and NYLL §190(3).

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

60. Defendants operate a wire and cable manufacturing company where the Plaintiff worked. At all relevant times, Individual Defendants Wie, Kang, and Hong possess or possessed operational control over Corporate Defendant; possess or possessed an ownership interest in Corporate Defendant; and control or controlled significant functions of Corporate Defendant.

61. Corporate Defendant and Individual Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

62. At relevant times, Corporate Defendant possessed substantial control over Plaintiff's and other similarly situated employees' working conditions, and over the policies and

practices with respect to the employment and compensation of Plaintiff, and all similarly situated individuals, referred to herein.

63. Corporate Defendant employed Plaintiff and is Plaintiff's employer within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

64. In the alternative, DSR International and its branch offices (aka, "DSR Family" and/or "Wire Team" and "Cable Team") constitute a single employer of Plaintiff, as the corporate divisions between the teams and/or branch offices are fictional.

65. Upon information and belief, Individual Defendants operate Corporate Defendant as either an alter ego of themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a. failing to adhere to the corporate formalities necessary to operate Corporate Defendant as a Corporation;

b. defectively forming or maintaining the corporate entity of Corporate Defendant, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records;

c. transferring assets and debts freely as between all Defendants and DSR International and its branch offices (aka, "DSR Family" and/or "Wire Team" and "Cable Team");

d. operating Corporate Defendant for his/their own benefit as the sole or majority shareholders;

e. operating Corporation Defendant for his/their own benefit and maintaining control over this corporation as a close corporation;

f. intermingling assets and debts of his/their own with Corporate Defendant;

g. diminishing and/or transferring assets of Corporate Defendant to avoid full liability as necessary to protect their own interests, and

h. Other actions evidencing a failure to adhere to the corporate form.

66. At all relevant times, Individual Defendants were Plaintiff's employers within the meaning of the FLSA, NYLL and other law.

67. Individual Defendants had the power to hire and fire Plaintiff, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiff's services.

68. Individual Defendants supervised Plaintiff's work schedules and conditions of his employment.

69. Individual Defendants also determined the rate and method of payment for Plaintiff and other similarly situated employees.

70. Individual Defendants also controlled and guided what limited recordkeeping that took place which Plaintiff contends is deficient pursuant to FLSA and NYLL requirements.

*Background and Employment Relationship*

71. Individual Defendants also controlled and guided what limited recordkeeping that took place which Plaintiff contends is deficient pursuant to FLSA and NYLL requirements.

72. Defendant DSR International Corp. operates a wire and cable manufacturing company that produces cables for automobile parts and related industries.

73. The principal executive office of DSR International is located at 107 Northern Boulevard, Suite #401, Great Neck, New York 11021.

74. Defendant Wie is the Chief Executive Officer of Defendant.

75. Plaintiff obtained his position with DSR through a job posting or advertisement on Hey Korean.

76. Plaintiff Sehwi Tak was employed by Defendants to work at DSR from approximately April 20, 2019 through May 31, 2026.

77. Plaintiff's employment with Defendants began in or around April 2019 after an interview conducted by Defendant Wie, who discussed with Plaintiff his work schedule and rate of pay.

78. At DSR International, Plaintiff worked as a member of DSR’s Wire Team, while Kang and Hong worked in DSR’s Cable Team.

79. During Plaintiff’s employment, he worked under the direct supervision of Defendant Wie, as a member of the "Wire Team", who served as team leader and the person in charge of Plaintiff's work.

80. Defendant Kang provided Plaintiff with detailed instructions when Wie suggested a task or course of action, and Kang supervised and advised Plaintiff concerning his work.

81. Upon information and belief, Hong worked with Kang in the Cable Team and participated in DSR’s operational work.

82. Although Plaintiff worked direct supervision of Defendant Wie at the “Wire Team,” Defendants Kang and Hong supervised and advised Plaintiff concerning his work while working in Cable Team.

83. Specifically, when DSR International held an employee meeting, Defendants Kang and Hong directly instructed Plaintiff on how to perform his duties and provided comments, suggestions, and/or advice.

84. The Individual Defendants possessed and exercised operational control over Plaintiff's employment, including through their authority or participation in hiring, setting or communicating work schedules, directing work, supervising Plaintiff, determining or communicating compensation, and overseeing DSR's business operations.

*Plaintiff's Job Duties and Responsibilities*

85. Plaintiff's primary job duties consisted of clerical, administrative, and production-support work involving the receipt, organization, and summarization of customer orders.

86. Specifically, when other wire companies (e.g., Defendants' customers) made orders regarding automotive wire parts, Plaintiff was responsible for receiving the orders and organizing the list of orders.

87. Plaintiff's duties primarily included summarizing order records in Excel spreadsheets.

88. Throughout Plaintiff's employment, he performed routine, non-exempt clerical and production-support tasks that did not require the exercise of discretion and independent judgment with respect to matters of significance.

89. Plaintiff did not hold any managerial, supervisory, or executive position within Defendants' company.

90. Plaintiff did not have authority to hire, fire, discipline, or direct other employees.

91. Plaintiff did not manage a department, subdivision, or enterprise of Defendants.

92. Plaintiff did not exercise independent judgment on matters of significance affecting Defendants' business operations or policies.

93. Plaintiff's work primarily consisted of routine order processing, data entry, and administrative record-keeping tasks, which were subject to the direct supervision of Defendant Wie, as well as Defendants Kang and Hong.

94. Upon information and belief, Defendant Kang often controlled and supervised employees, including Plaintiff, remotely and/or indirectly while primarily working in Cable Team.

95. Upon information and belief, Defendant Hong joined DRS International's U.S. branch office located at 107 Northern Boulevard, Suite #401, Great Neck, New York 11021.

96. Defendant Wei is known to Plaintiff as the general owner and the main owner of DSR International.

97. Plaintiff did not perform work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction, nor did Plaintiff perform creative work in a recognized field of artistic endeavor.

98. During Plaintiff's employment, his job duties did not fall within any exemption from overtime under the Fair Labor Standards Act or New York Labor Law.

*Plaintiff's Work Schedule*

99. Throughout Plaintiff's employment, his regular *in-office* work schedule was Monday through Friday, approximately 8:30 a.m. to 6:00 p.m. or 6:15 p.m.

100. However, on many occasions, Defendant Wie sent Plaintiff messages via KakaoTalk, a Korean mobile instant messaging application, even after Plaintiff's in-office working hours, to inquire about the status of Plaintiff's work and/or assign additional duties and tasks that required Plaintiff to respond immediately.

101. For instance, Defendant Wie sent Plaintiff a KakaoTalk message after 8:00 p.m. to confirm certain duties Plaintiff had performed during his in-office working hours because DSR's

shipment schedule was set to expire that same evening, requiring Plaintiff to respond even at that late hour.

102. As such, Plaintiff was required to remain on standby 24/7 to respond to Defendant Wie's messages to maintain his employment at DSR International and avoid criticism from Defendant Wie.

103. During his employment, Plaintiff regularly worked at least 8.5 hours per day *in the office* and was required to remain on standby to respond to Defendant Wie's work-related inquiries as late as after 8:00 p.m. Accordingly, Plaintiff regularly worked at least 57.5 hours per week, including at least 42.5 hours per week at DSR International's business premises and additional time spent on standby after his in-office working hours, responding to Defendant Wie's work-related instructions and/or inquiries until at least 8:00 p.m. each day.

*Plaintiff's Compensation and DSR's Payment Structure*

104. Defendants paid Plaintiff on a monthly salary basis.

105. DSR International paid Plaintiff by wire transfer or check.

106. From approximately April 2019 through February 2022, Plaintiff received a monthly gross salary of approximately $3,583.34 to $3,666.67, equivalent to an annual salary of approximately $43,000.08 to $44,000.04.

107. Beginning in or around March 2022, Defendants increased Plaintiff's monthly gross salary to approximately $3,750.00, equivalent to an annual salary of approximately $45,000.00.

108. In or around early 2026, Defendants further increased Plaintiff's monthly gross salary to approximately $4,250.00, equivalent to an annual salary of approximately $51,000.00.

109. Plaintiff's paystubs, throughout his employment at DSR, reflect the following monthly gross wage payments: $2,970.61 in December 2020, $3,032.60 in March, April, June, and November 2021, $3,043.35 in March 2022, and $3,105.43 in May 2022.

110. While employed by DSR, Plaintiff received monthly paystubs reflecting his gross wages; however, Defendants failed to separately identify any overtime premium compensation for hours worked in excess of 40 hours in a workweek.

111. Although Defendant paid Plaintiff a fixed monthly salary, Plaintiff was not an exempt employee under the Fair Labor Standards Act or New York Labor Law.

112. At all times during Plaintiff's employment, he did not perform executive, administrative, or professional duties that would qualify him for an exemption from overtime pay requirements.

113. However, Defendants continued to pay on a monthly basis rather than a weekly or biweekly basis.

114. Defendants did not treat Plaintiff as exempt from overtime. Instead, Defendants simply failed to pay Plaintiff any overtime compensation whatsoever.

115. Throughout Plaintiff's employment, Defendants did not inform Plaintiff that he was classified as an exempt employee, did not provide any written acknowledgment or policy regarding exempt status, and did not communicate any policy permitting or prohibiting salary deductions.

116. Plaintiff was entitled to overtime compensation at a rate of one and one-half times his regular rate of pay for all hours worked in excess of 40 hours per workweek, as he regularly worked at least 42.5 hours per week in the office, in addition to performing work outside his regular office hours at least until 8:00 p.m. whenever instructed by Defendant Wie.

117. Defendants did not pay Plaintiff overtime compensation at a rate of one and one-half times his regular rate of pay for hours worked in excess of 40 hours per workweek.

118. Defendants issued purported paystubs to Plaintiff reflecting only a fixed monthly gross wage amount, without separately identifying or compensating Plaintiff for his regular and overtime hours.

119. Defendant's failure to pay Plaintiff overtime compensation was willful or showed reckless disregard of the requirements of the Fair Labor Standards Act and New York Labor Law.

120. Although Plaintiff's workday, including both in-office and after-hours work, regularly extended beyond 10 hours (e.g., from 8:30 a.m. until at least 8:00 p.m.), Defendants failed to pay Plaintiff the additional hour of pay required under the NYLL for workdays exceeding 10 hours, despite paying him less than or at the minimum wage.

121. At or before the commencement of Plaintiff's employment in or around April 2019, Defendants failed provide Plaintiff with written notice of his wage rate, basis of wage payment, overtime rate, allowances, regular pay day, employer's name, address, and telephone number, or other information required by New York Labor Law § 195(1).

122. Defendants failed provide Plaintiff with a wage notice in English or Korean identified by Plaintiff as his primary language.

123. Moreover, Defendant failed provide Plaintiff with notice of any changes to the required wage notice information during his employment, including when Defendants increased Plaintiff's monthly salary in or around March 2022 and again in early 2026.

124. Defendants' failure to provide the required wage notice at hire and upon changes in wage terms violated New York Labor Law § 195(1).

125. With each payment of wages throughout Plaintiff's employment from approximately April 2019 through May 2026, Defendants failed to provide Plaintiff with accurate and complete wage statements as required by New York Labor Law § 195(3).

126. The purported wage statements provided to Plaintiff with each payment failed to include the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, and the number of overtime hours worked.

127. New York Labor Law § 195(3) requires that for all employees who are not exempt from overtime compensation, the wage statement must include the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, and the number of overtime hours worked.

128. However, the paystubs provided to Plaintiff showed only a monthly gross wage amount identified as "Gross Wages," "BONUS," or "Total Wages," along with tax withholdings and net pay.

129. Additionally, the purported wage statements provided to Plaintiff failed to separately identify the regular and overtime hours worked and the applicable regular and overtime rates of pay, and failed to accurately reflect the actual hours Plaintiff worked and the compensation due for those hours.

130. Upon information and belief, Defendants did not keep, and/or allow to be kept, inaccurate records of the hours worked by Plaintiff.

131. Defendants failed to adequately and accurately disclose and/or keep track of the number of hours Plaintiff worked during the day, the total hours Plaintiff worked during the week and/or the total amount of overtime hours worked each week.

132. If Plaintiff's hours had been properly documented and calculated, then the Plaintiff's total amount of hours worked would have triggered payment calculated at premium overtime rates well in excess of the amount of money actually paid to Plaintiff by the Defendants.

133. Defendants' policy and practice was to be deliberately and/or willfully indifferent to the amount of regular wages and overtime wages that Plaintiff was entitled to under the law.

134. At all times, Defendants' policy and practice in regards to paying wages to Plaintiff had been willful in its violation of the relevant federal and state labor laws.

## STATEMENT OF CLAIM

### COUNT I
### [Violations of the Fair Labor Standards Act—Overtime Wage]

135. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

136. The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC § 207(a).

137. The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

138. Defendants have failed to pay Plaintiff's premium overtime wages to which he is entitled under the FLSA at the rate of time and one-half for all hours worked in excess of 40 hours per week.

139. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

140. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff's.

141. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

142. As a result of Defendants' willful violations of the FLSA, Plaintiff has suffered damages by being premium overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**COUNT II**
**[Violation of New York Labor Law—Overtime Pay]**

143. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

144. Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

145. Defendants have failed to pay Plaintiff premium overtime wages due and owing under the NYLL and the supporting New York State Department of Labor Regulations at the rate of time and one half for all hours worked in excess of 40 hours per week.

146. Through their knowing or intentional failure to pay Plaintiff premium overtime pay, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

147. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants unpaid overtime wages and liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**COUNT III**
**[Violation of New York Labor Law—Minimum Wage]**

148. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

149. At all relevant times, Plaintiff was employed by Defendants within the meaning of New York Labor Law § § 2 and 651.

150. Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

151. During his employment, Plaintiff regularly worked at least 8.5 hours per day *in the office* and was required to remain on standby to respond to Defendant Wie's work-related inquiries as late as after 8:00 p.m. Accordingly, Plaintiff regularly worked at least 57.5 hours per week, including at least 42.5 hours per week at DSR International's business premises and additional time spent on standby after his in-office working hours, responding to Defendant Wie's work-related instructions and/or inquiries until at least 8:00 p.m. each day.

152. Although Plaintiff's workday, including both in-office and after-hours work, regularly lasted at least 11.5 hours (e.g., from 8:30 a.m. until at least 8:00 p.m.), Plaintiff's hourly rate fell below the minimum wage required under the NYLL for the majority of his employment.

153. Defendants knowingly and willfully violated Plaintiff's rights by failing to pay him minimum wages in the lawful amount for hours worked.

154. Thus, pursuant to Section 663(1) of the New York Minimum Wage Act, Plaintiff is entitled to back pay for unpaid minimum wages, in an amount to be determined at trial, liquidated damages, reasonable attorneys' fees, and costs.

**COUNT IV**
**[Violation of New York Labor Law—Spread of Hour Pay]**

155. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

156. The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL § § 190, et seq., and § § 650, et seq., and New York State Department of Labor regulations § 146-1.6.

157. During his employment, Plaintiff regularly worked at least 8.5 hours per day *in the office* and was required to remain on standby to respond to Defendant Wie's work-related inquiries as late as after 8:00 p.m. Accordingly, Plaintiff regularly worked at least 57.5 hours per week, including at least 42.5 hours per week at DSR International's business premises and additional time spent on standby after his in-office working hours, responding to Defendant Wie's work-related instructions and/or inquiries until at least 8:00 p.m. each day.

158. Although Plaintiff's workday, including both in-office and after-hours work, regularly extended beyond 10 hours (e.g., from 8:30 a.m. until at least 8:00 p.m.), Defendants failed to pay Plaintiff the additional hour of pay required under the NYLL for workdays exceeding 10 hours, despite paying him less than or at the minimum wage.

159. Defendants' failure to pay Plaintiff spread-of-hours pay was not in good faith.

160. Such failure to pay was willful within the meaning of the NYLL § 198(1-a).

161. Defendant's willful and intentional failure to pay the spread of hours violates the New York State Code of Rules and Regulations, Title 12, § 142-2.4, which requires employers to pay an additional hour at minimum wage when an employee works in excess of 10 hours in a single day.

162. Plaintiff is entitled to compensatory damages for Defendants' failure to pay the required spread of hours for each day they worked more than 10 hours, as well as liquidated damages, reasonable attorney's fees, costs and prejudgment interest.

**COUNT V**
**[Violation of New York Labor Law—Wage Notices]**

163. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

164. Defendants have willfully failed to supply Plaintiff with a wage notices, as required by NYLL, Article 6, § 195(1), in English, or in the language (Korean) identified by Plaintiff as his primary language, containing Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner has deemed material and necessary.

165. Through their knowing or intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq*., and the supporting New York State Department of Labor Regulations.

166. Due to defendants' violation of NYLL § 195(1), Plaintiff is entitled to recover from Defendants liquidated damages $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

**COUNT VI**
**[Violation of New York Labor Law—Wage Statements]**

167. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

168. Defendants have willfully failed to supply Plaintiff with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

169. Through their knowing or intentional failure to provide Plaintiff with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

170. Due to Defendants' violation of NYLL § 195(3), Plaintiff is entitled to recover from the Defendants liquidated damages of $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198-1(d).

**Prayer for Relief**

WHEREFORE, Plaintiff requests that this Court grant the following relief:

a) Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under Fair Labor Standards Act, and its supporting regulations, and the New York Labor Law, Articles 6 and 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

b) A declaration that the Defendants' acts and practices complained of herein are willful violations with the meaning of 29 U.S.C. § 260 and NYLL § 198(1-a);

c) Directing Defendants to make Plaintiff whole for all unpaid overtime wages, and spread of hours pay due as a consequence of Defendant's violation of FLSA and NYLL;

d) Directing Defendants to pay Plaintiff an additional amount of liquidated damages as provided for in 29 U.S.C. § 216(b) and NYLL § 198(1-a);

e) Awarding the Plaintiff, the costs of this action together with reasonable attorneys' fees, as provided in 29 U.S.C. § 216(b) and NYLL § 198(1-a);

f) Awarding the Plaintiff pre- and post-judgment interest as provided for in NYLL § 198(1-a);

g) Awarding the Plaintiff statutory damages pursuant to NY State Labor Law wage notification requirements, and,

h) Awarding the Plaintiff such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: Flushing, New York
September 29, 2026

**SEO LAW GROUP, PLLC**

By: /s/ Diana Seo
Diana Seo, Esq.
136-68 Roosevelt Ave., Suite 726
Flushing, New York 11354
Telephone: (718) 500-3340
Email: diana@seolawgroup.com
*Attorneys for Plaintiff*

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR SERVICES RENDERED**

To: Jae Saeng Wie

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Sehwi Tak intends to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of DSR International Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporation for services performed by them or the said corporation within the six (6) years preceding the date of this notice and has expressly authorized the undersigned, as his attorney, to make this demand on his behalf.

Dated: September 29, 2026

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR SERVICES RENDERED**

To: Seungmuk Kang

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Sehwi Tak intends to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of DSR International Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporation for services performed by them or the said corporation within the six (6) years preceding the date of this notice and has expressly authorized the undersigned, as his attorney, to make this demand on his behalf.

Dated: September 29, 2026

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR SERVICES RENDERED**

To: Woungkoo Hong

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Sehwi Tak intends to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of DSR International Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporation for services performed by them or the said corporation within the six (6) years preceding the date of this notice and has expressly authorized the undersigned, as his attorney, to make this demand on his behalf.

Dated: September 29, 2026

**DEMAND BY EMPLOYEES TO INSPECT BOOKS, RECORDS, AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW**

TO:

DSR International Corp.
107 Northern Boulevard, Suite #401
Great Neck, New York 11021

PLEASE TAKE NOTICE, that Sehwi Tak pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to him as laborer, servant and/or employee of the above corporation for services performed by him for the above corporation within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporation, and who has expressly authorized the undersigned, as their attorney, to make this demand on his behalf.

To the extent that the above corporation keeps and maintains the predecessor corporation(s)' archival records, it is subject to this request and must not be destroyed.

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporation and to make extracts there from on or after five (5) days from receipt of this notice.

Dated: September 29, 2026

**DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Dated: September 29, 2026

**EXHIBIT A**

**CONSENT TO SUE**
**UNDER FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by DSR International Corp. and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee retainer signed by the named plaintiff in this case.

Sehwi Tak
Full Legal Name

______________________
Signature

9/28/26
Date